*αEE*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTISHA ADAMS, | ) | |
| ex rel., T.H., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 7265 |
| | ) | |
| v. | ) | **Magistrate Judge** |
| | ) | **Maria Valdez** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM, OPINION AND ORDER</u>

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Artisha Adams' claim for Supplemental Security Income Benefits under title XVI of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has filed a cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56. For the reasons contained herein, Plaintiff's Motion for Summary Judgment [Doc. No. 14] is granted in part, and the Commissioner's Cross-Motion for Summary Judgment [Doc. No. 19] is denied. The Court finds that this matter should be remanded for further proceedings consistent with this order.

# I. PROCEDURAL HISTORY

Adams originally applied for Supplemental Security Income ("SSI") disability benefits on behalf of her minor child T.H. on April 30, 2004. (R. 11.) The claim was denied on August 24, 2004 and upon reconsideration on February 4, 2005. (*Id.*) Adams filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on November 2, 2006. (*Id.*) The ALJ continued the hearing to allow the claimant to obtain representation and updated medical evidence. (*Id.*) A supplemental hearing was held on April 27, 2007. (*Id.*) Adams and T.H. personally appeared and testified at the hearing and were represented by counsel. (*Id.*)

On October 26, 2007, the ALJ denied Adams' claim for benefits and found the minor child not disabled under the Social Security Act. (R. 27.) The Social Security Administration Appeals Council denied Adams' request for review on July 22, 2008, (R. 5-7), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

# II. FACTUAL BACKGROUND

## A. Background

T.H. was born on October 23, 1997. (R. 14.) At the time of the ALJ hearing she was nine years old. (R. 492.) She attends school, and at the time of the hearing, she was in 3rd grade. (R. 498.)

Adams claims disability on behalf of T.H. beginning on August 1, 2001, because of asthma, attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and mood disorder/bipolar disorder. (R. 14.)

## 1. Testimony, Medical Evidence and School Evaluations

### a. T.H.'s Testimony

T.H. testified that she does not get along with her teachers Ms. Hartsell and Ms. McGee because they do not listen to her. (R. 498.) She does not listen when her teachers tell her to do something, and she has gotten in trouble for it. (R. 498-99.) T.H. stated that she was suspended twice for arguing with another student and has had one detention for talking back to a teacher. (R. 499.) T.H. is given an inhaler and other medication while at school. (R. 502-03.) T.H. testified that when she gets out of breath, she uses her inhaler and rests. (*Id.*)

T.H. stated that her grades are not good because math, social studies and science are not her favorite subjects. (R. 503.) She does not always do her homework. (R. 506.) According to T.H., she has three friends at school, but she does not always get along with them. (R. 504.) T.H. is a cheerleader for a baseball team. (R. 507.) T.H. stated that she gets along with the ten other girls on the team and the coach. (R. 508-09.) At home, she helps out with chores by cleaning her bathroom. (R. 509.) T.H. testified that she has temper tantrums at home, and she argues and fights with her older sister almost every day. (R. 510-11.)

### b. **Adams' Testimony**

Adams testified that T.H. does not get along with other children. (R. 513.) Adams further stated that T.H. gets into verbal arguments and physical confrontations with other children and her sister every day. (*Id.*) According to Adams, T.H. has been treated bi-monthly by psychiatrist Alfredo Grossranad for two and a half years. (R. 514.) T.H. also saw a therapist once per week. (R. 523.)

Adams confirmed that T.H. was suspended twice from school and received one detention. (R. 516-17.) Adams further testified that she has frequently received calls from T.H.'s school complaining about her not paying attention in class, not following instructions, talking back and refusing to do class work. (R. 519.) Adams stated that T.H. does not complete her homework without supervision. (R. 524.) Furthermore, Adams has to supervise T.H. when T.H. does chores. (R. 525.) Adams asserted that T.H. gets mad easily and has difficulty concentrating while playing games with her family. (R. 526.) T.H. cannot transition from one activity to another and throws temper tantrums at bedtime. (*Id.*)

Adams claimed that T.H.'s doctor prescribed medication so T.H. could fall asleep at night; however, T.H. then had a difficult time waking up in the morning. (R. 527.) Adams said that a nurse administered T.H.'s inhaler and Risperdal medication at school. (R. 520.) However, T.H.'s doctor discontinued the Risperdal (R. 520), and Adams testified that T.H.'s behavior got worse with more talking back, arguments and temper tantrums. (R. 528.)

### c. *Medical Evidence*

### i. Social Security Administration Reports

The record contains four relevant childhood disability evaluations: (1) a December 1, 2003 evaluation by Donald MacLean, Ph.D., (R. 348-53); (2) a May 15, 2003 evaluation by Donna Hudspeth, Psy.D., (R. 354-61); (3) an August 15, 2004 evaluation by Donna Hudspeth, Psy.D., (R. 342-47) ; and (4) a January 27, 2005 evaluation by Ms. Victoria Dow and Donald MacLean, Ph.D., (R. 336-41).

Dr. MacLean concluded that T.H. had less than marked limitations in attending and completing tasks, and interacting and relating with others, and T.H. had no limitations in the four other functional domains. (R. 350-51.) Dr. Hudspeth's May 15, 2003 evaluation concluded that T.H. had no limitations in any domain except for a less than marked limitation in health and physical well-being. (R. 356-58.) Dr. Hudspeth's August 15, 2004 evaluation concluded that T.H. had less than marked limitations in attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being, and T.H. had no limitations in the two other domains. (R. 344-45.) Ms. Dow and Dr. MacLean concluded in the January 27, 2005 evaluation that T.H. had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, and T.H. had no limitations in the other two domains. (R. 338-39.)

## ii. **Treating Mental Health Professionals**

The record contains the following relevant medical evidence from T.H.'s treating mental health professionals: (1) an October 21, 2000 psychological report completed by Nancy J. Murray, Ed.D., (R. 404-07); (2) a September 11, 2003 psychological evaluation completed by Alan Jacobs, Ph.D., (R. 295-97); (3) a December 7, 2004 psychiatric diagnostic assessment and treatment recommendation at Mount Sinai Hospital; (4) January 19, 2005 and June 15, 2005 reports by Kimberly Lewis, M.A., (R. 325-26, 384-89); (5) a June 2, 2006 medical questionnaire completed by Kim Mula, Psy.D., (R. 367-73); and (6) December 2006 and January 2007 psychological evaluations conducted by Ms. Katz, B.A. and Elaine Rado, Ph.D., (R. 462-69).

Dr. Murray conducted a psychological evaluation of T.H. on October 21, 2000. (R. 404.) Dr. Murray noted that T.H. was overactive, could not sit still for more than three to four minutes, was impulsive, and easily distracted. (R. 404.) Dr. Murray observed that T.H. was not able to share toys or the testing materials with her older sister. (*Id.*) T.H.'s behavior alternated between approaching adults playfully and then avoiding them or displaying defiance or noncompliance. (*Id.*) Dr. Murray concluded that T.H. met the diagnostic criteria for ADHD and ODD. (R. 406.) Dr. Murray recommended that T.H. be placed in an appropriate, specialized classroom. (R. 407.)

Dr. Jacobs performed a psychological evaluation on September 11, 2003 (R. 295-97.) Adams informed Dr. Jacobs that T.H was not able to sit still at home, had

temper tantrums and was oppositional. (R. 295.) Dr. Jacobs noted that T.H. was restless during the evaluation and indicated that T.H. was functioning in the low normal to upper borderline range of intellectual capacity. (R. 297.) He diagnosed T.H. with ODD and a rule out of ADHD, inattentive type. (*Id.*)

On December 7, 2004, a psychiatrist at Mount Sinai Hospital completed a psychiatric diagnostic assessment and treatment recommendation. (R. 327-28.) The psychiatrist noted that T.H.'s behavior was erratic, intrusive and frequently inappropriate and that her mood was labile, ranging from crying loudly to silent contempt. (R. 327.) The psychiatrist diagnosed T.H. with ODD, mood disorder not otherwise specified, parent-child relational difficulties and asthma. (R. 328.)

Ms. Lewis conducted weekly therapy with T.H. from October 7, 2004 to June 15, 2005. (R. 384.) Ms. Lewis diagnosed T.H. with bipolar disorder, ODD, ADHD, and asthma. (*Id.*) Ms. Lewis reported that T.H. was frequently disrespectful towards others, and she refused to comply with authority figures. (R. 325.) Ms. Lewis reported that T.H. often acted out disruptively without provocation and had "emotional meltdowns characterized by temper tantrums" when she did not get her way. (*Id.*) According to Ms. Lewis, T.H.'s mood and behavior were inconsistent; she had the ability to perform well academically one day, yet she lacked the ability to concentrate and perform the same task the following day. (*Id.*)

Dr. Mula began treating T.H. on a monthly or on an as needed basis beginning on December 7, 2004. (R. 367.) Dr. Mula diagnosed T.H. with ADHD and bipolar disorder. (*Id.*) Dr. Mula reported that T.H. was prescribed Concerta and

Risperdal which provided some decrease in T.H.'s symptoms. (R. 367.) Dr. Mula opined that T.H. had a marked limitation in acquiring and using information. (R. 371.) She noted that T.H. "struggles to maintain newly acquired information" and "becomes quickly frustrated and gives up easily." (*Id.*) Dr. Mula assessed a marked and extreme limitation in interacting and relating with others. (*Id.*) The doctor noted that T.H's "social skills are extremely delayed [a] majority of the time" and "she chronically struggles to maintain control." (*Id.*) Dr. Mula assessed an extreme limitation in personal care noting that T.H. "becomes immediately behaviorally and emotionally out of control when her immediate needs are not met" though "medication is helping manage the intensity with mild success." (R. 372.) Dr. Mula assessed a moderate limitation in attending and completing tasks, and health and physical well-being, and a less than moderate limitation in moving about and manipulating objects. (R. 371-72.)

Ms. Katz and Dr. Rado conducted testing over several sessions with T.H. since T.H. had a difficult time maintaining focus. (R. 464.) T.H. achieved a full scale IQ of 63 which was classified in the extremely low range. (R. 465.) T.H. scored in the extremely low range for verbal comprehension and perceptual reasoning, in the low average range of working memory, and the borderline range for processing speed. (R. 464.) On the achievement tests, T.H's spelling was at the 5th grade level and her arithmetic and reading were at the 3rd grade level. (R. 466.)

#### d. **School Evaluations**

#### i. **Teacher Reports**

The record contains six relevant questionnaires completed by T.H.'s teachers: (1) a March 18, 2003 report completed by Ms. Miller, (R. 244-51); (2) a June 15, 2004 report completed by Ms. Cynthia Carothers, (R. 227-34); (3) a November 5, 2004 report completed by T.H.'s first grade teacher, (R. 207-14); (4) a March 14, 2006 report completed by Ms. Tran, (R. 163-69); (5) an October 20, 2006 report completed by Ms. Hartsell, (R. 170-78); and (6) a November 16, 2006 report completed by Ms. Hartsell, (R. 160).

T.H.'s preschool and kindergarten teachers, Ms. Miller and Ms. Carothers respectively, reported that T.H. displayed no problems in any of the six functional domains. (R. 228-33, 245-49.) Ms. Carothers further reported that T.H.'s behavior at school was that of "a typical six year old." (R. 233.) She further noted that T.H. "is very bright, completes assigned work and is very respectful at school." (*Id.*) Ms. Carothers assessed that T.H. was working at a first-grade level in reading, math, and written language. (R. 227.)

T.H.'s first grade teacher assessed T.H.'s instructional level at a 1.4 for reading and a 1.3 for math and written language. (R. 207.) Under the acquiring and using information domain, the teacher noted that T.H. had an obvious problem in comprehending and doing math problems. (R. 208.) Under the attending and completing tasks domain, the teacher noted that T.H. had an obvious problem in working without distracting self or others, and working at reasonable pace/finishing

on time. (R. 209.) Under the other domains, the teacher reported that T.H. either had no problems or only slight problems. (R. 208-12.)

T.H.'s second grade teacher, Ms. Tran, reported that T.H. had a less than moderate limitation in acquiring and using information, and in attending and completing tasks, with no limitations in the other four functional domains. (R. 167-68.)

Ms. Hartsell, T.H.'s third grade teacher, noted that T.H. had difficulty staying on task and struggled with following directions approximately 10% of the time. (R. 171.) Ms. Hartsell assessed that T.H. had no limitation in moving about and manipulating objects, and in personal care. (R. 177.) She assessed that T.H. had a less than moderate limitation in interacting and relating with others, and a moderate limitation in acquiring and using information, attending and completing tasks, and health and physical well-being. (R. 176-77.) Ms. Hartsell noted that T.H. is in the third grade and functions at a third grade level. (R. 160.) She further reported that T.H.'s attention span, concentration, and on-task behavior were "average with some random days off task." (*Id.*) Ms. Hartsell reported that T.H's attendance was excellent, she was able to transition without a problem, she had no behavior concerns in classroom or school, she got along well with peers and teachers, and she had very good communication skills. (*Id.*)

### ii. Other School Reports

T.H.'s first quarter grades included mostly *A*s and *B*s with one *C* (listening skills) and one *F* (math). (R. 158.) T.H.'s third quarter grades included one *A*, three

10

$B$s, four $C$s, four $D$s, and two $F$s. (R. 190-91.) A letter from LEARN Charter School dated April 12, 2007 indicated that T.H. was in danger of being held back due to poor grades in math. (R. 188.)

**B. ALJ Decision**

The ALJ found that T.H had not engaged in substantial gainful activity at any relevant time. (R. 14.) The ALJ found that T.H. had the following severe impairments: asthma, ADHD, ODD, and mood disorder/bipolar disorder. (*Id.*) However, the ALJ found that these conditions did not meet or medically equal listings 103.03, 112.04, or 112.11. (R. 18-19.)

In considering the six functional domains, the ALJ found that T.H. did not have an impairment or combination of impairments that functionally equaled the listings. (R. 19.) Specifically, the ALJ found that T.H. had a less than marked limitation in acquiring and using information because school records have essentially assessed an age-appropriate child. (R. 22.) The ALJ cited the most recent school assessment reports in finding that T.H. had a less than marked limitation in attending and completing tasks, and in interacting and relating with others. (R. 23-24.) The ALJ found that T.H. had a less than marked limitation in moving about and manipulating objects because T.H. is a cheerleader, she uses her inhaler and rests if she gets out of breath, and she has not been hospitalized in the last two years. (R. 25.) The ALJ found that T.H. had no limitation in the ability to care for herself. (R. 26.) The ALJ found that T.H. had a less than marked limitation in health and physical well-being since T.H. is on medication for asthma and

ADHD/ODD and school records indicate that the medications permit T.H. to perform effectively in the school environment. (R. 27.) Since T.H.'s conditions did not medically meet or equal or functionally equal a listing, the ALJ ruled that T.H. was not disabled under the Social Security Act. (R. 27.)

## I.   DISCUSSION

### A. ALJ Legal Standard

Under the Social Security Act, a child is disabled if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). In order to determine whether a child is disabled, the ALJ employs a three-step analysis. 20 C.F.R. § 416.924(a). First, a child engaged in substantial gainful activity will not be considered disabled, and the claim will be denied. *Id.* Second, if the child does not have a physical or mental impairment or combination of impairments that is severe, her claim will be denied. *Id.* Third, the child's impairment must meet, medically equal, or functionally equal one of the listings of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 or else her claim will be denied. *Id.*

To determine whether an impairment functionally equals one of the listings, the ALJ evaluates its severity in six functional domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6)

12

health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In order for an

impairment to be functionally equivalent to a listing, the ALJ must find a "marked"

limitation in two domains or an "extreme" limitation in one domain. §416.926a(a).

### B. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is

limited to determining whether the ALJ's findings are supported by substantial

evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.

2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.

Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its

judgment for that of the Commissioner by reevaluating facts, reweighing evidence,

resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478

F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony on

the record, [but] the ALJ's analysis must provide some glimpse into the reasoning

behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th

Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### C. <u>Analysis</u>

Adams argues that the ALJ's decision was in error for the following reasons: (1) the ALJ failed to weigh the opinions of T.H.'s treating mental health professionals in determining that T.H.'s impairments did not functionally equal the listings, and (2) the ALJ failed to analyze whether T.H. met or equaled Listing 112.05. Adams requests reversal of the ALJ's decision or in the alternative remand. Plaintiff's Brief in Support of her Motion for Summary Judgment [hereinafter Pl.'s Brief] at 19 [Doc. No. 18].

## 1. <u>Opinions of Treating Mental Health Professionals</u>

Adams first argues that the ALJ failed to properly weigh the opinions of

T.H.'s treating mental health professionals in determining that T.H.'s impairments

did not functionally equal the listings. *Id.* at 12. Adams points to the fact that Dr.

Mula, T.H.'s treating psychologist, found a marked or extreme limitation in three of

the six domains – a finding which meets the functional equivalence standard.

Furthermore, Adams contends that Dr. Mula's opinion is supported by other

medical evidence in the record. *Id.* at 13-14. Adams concludes that the ALJ erred in

rejecting Dr. Mula's opinion and the opinion of other treating sources in favor of the

opinion of teachers and state agency consultants without proper explanation.

The Commissioner responds that there is substantial evidence in the record

that conflicted with Dr. Mula's opinion and indicated that T.H. functioned well at

school and in her community. Defendant's Response and Memorandum in Support

of Cross-Motion for Summary Judgment [hereinafter Def.'s Response] at 2-3 [Doc.

No. 20]. This evidence includes reports from T.H.'s teachers and evaluations from

state agency psychological consultants. The Commissioner contends that Dr. Mula

failed to support her limited opinion so the ALJ had a reasonable basis for not

giving her opinion substantial weight.

The ALJ is required to give controlling weight to the medical opinion of a

treating medical professional if the opinion is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and not inconsistent with

other substantial evidence. 20 C.F.R. 404.1527(d)(2); *Hofslien v. Barnhart*, 439 F.3d

375, 376 (7th Cir. 2006). Social Security Ruling (SSR) 06-3p explains that opinions from "acceptable medical sources" may be entitled to greater weight than other opinions since acceptable medical sources "are the most qualified health care professionals." SSR 06-3p. Although an ALJ may determine that teacher opinions outweigh the opinions from acceptable medical sources, the ALJ must "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons . . . ." SSR 06-3p.

If a treating source's opinion is not given controlling weight, it becomes another piece of evidence that the ALJ must weigh in making his decision. *Hofslien*, 429 F.3d at 376. In determining how much weight to give the evidence, the ALJ should "consider the length, nature, and extent of the treatment relationship, [the] frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009).

The ALJ is required to "build an 'accurate and logical bridge from the evidence to [his] conclusion'" so that a reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290

F.3d 936, 941 (7th Cir. 2002)). If the ALJ dismisses strong evidence favorable to the plaintiff, he must provide an explanation on why that evidence is overcome by the evidence on which he relies. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

In this case, the ALJ concluded that T.H.'s conduct and behavioral problems were primarily manifested at home and not in the school and community setting. (R. 20.) The ALJ supported this conclusion with school reports which indicated a "very bright" student, who functions fairly well socially and behaviorally. (*Id.*) Although the ALJ noted that the reports from treating sources indicated marked/severe behavioral concerns at home and at school, the ALJ dismissed this evidence as contrary to the "weight of the evidence." (R. 21.) This Court finds that the ALJ failed to adequately explain and build a logical bridge from the evidence to this conclusion.

First, the ALJ failed to articulate why Dr. Mula's opinion was not given controlling weight. The ALJ did not analyze Dr. Mula's opinion to determine if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," nor did the ALJ discuss the supporting evidence from other treating sources such as Dr. Murray, Dr. Jacobs, psychiatrists from Mount Sinai Hospital or Ms. Lewis. The ALJ reasoned that the opinions of the treating sources were in opposition to the teacher's reports and to the state agency psychological consultants; however, the ALJ gave no reason for accepting the teacher and consultant opinions over the opinions from the treating sources. Although opinions from other

acceptable medical sources such as the state agency consultants can be given great weight, their opinions generally are not given controlling weight like that of a treating source. SSR 96-2p at *1; *see also Clifford*, 227 F.3d at 870 (finding that more weight is generally given to the opinion of the treating physician).

In an attempt to rehabilitate the ALJ's decision, the Commissioner provided a possible underlying rationale for why the ALJ relied on the reports from T.H.'s teachers and not her treating mental health professionals. However, in reviewing the decision, this Court cannot consider the Commissioner's post-hoc analysis but must limit itself to the reasons supplied by the ALJ. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Getch v. Astrue*, 539 F.3d 473, 481 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Second, even if the ALJ had sufficiently articulated why the treating sources were not given controlling weight in this case, the ALJ still failed to properly weigh all of the evidence. A treating source's opinion that is not given controlling weight becomes another piece of evidence that the ALJ must weigh. *Hofslien*, 439 F.3d at 376. According to Social Security Rulings, "[a] finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. The amount of weight given to the opinion depends on the length, nature, and extent of the treatment relationship. *Moss*, 555 F.3d at 562. In this case, the ALJ undertook no analysis of the weight to be given to Dr. Mula's opinion.

The ALJ did not consider the length of time T.H. and Dr. Mula had been meeting, the extent of their relationship or the frequency of their sessions.

Third, the ALJ dismissed evidence that was favorable to the plaintiff without providing an adequate explanation. In three of the six functional domains, Dr. Mula found a marked or extreme limitation. However, the ALJ failed to mention this evidence when evaluating each of the domains. Under the "acquiring and using information" domain, the ALJ noted that school records assessed an age-appropriate child. (R. 22.) The ALJ provided no mention of Dr. Mula's report which noted a marked limitation in the domain due to T.H.'s "struggle to maintain newly acquired information." (R. 371.) Similarly, under the "interacting and relating with others" domain, Dr. Mula assessed an extreme limitation and noted that T.H.'s "social skills are extremely delayed [a] majority of the time." (*Id.*) However, the ALJ did not mention this evidence, but only stated that recent school assessments noted a less than marked limitation. Furthermore, Dr. Mula's conclusions were consistent with other treating sources such as Dr. Murray, Dr. Jacobs, psychiatrists from Mount Sinai Hospital, and Ms. Lewis (R. 295-97, 325-28, 384-89, 404-07.) Despite the fact that this evidence favorable to the plaintiff supports Dr. Mula's conclusions, the ALJ did not address this evidence in his decision. Moreover, the ALJ gave no reason for why the opinions of T.H.'s teachers, who have no medical training or experience, should be given more weight than the opinions of the treating, medically-trained mental health professionals.

This Court finds that the ALJ's failure to properly weigh the opinions of T.H.'s treating sources and his failure to articulate why evidence favorable to the plaintiff was ignored requires remand. *See Moss*, 555 F.3d at 560 (remanding case due to ALJ's failure to give appropriate weight to the medical opinions of the plaintiff's treating physician); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001) (remanding case due to the ALJ's failure to examine the weight to be given to the treating physician and failure to address why evidence favorable to the plaintiff was overcome by the evidence on which the ALJ relied); *Clifford*, 227 F.3d at 871 (finding that remand was required where ALJ failed to articulate why treating physician's opinions were discounted and where evidence favorable to the plaintiff was ignored).

### 2. *Listing 112.05*

Adams contends that T.H. arguably meets the requirements of Listing 112.05. In the testing conducted by Ms. Katz and Dr. Rado, T.H. achieved a full-scale IQ of 63 which was classified in the extremely low range. T.H. also scored in the extremely low range for verbal comprehension and perceptual reasoning. Additionally, T.H. has been diagnosed with ADHD, ODD, and asthma. Adams argues that due to this evidence, the ALJ's failure to mention and analyze Listing 112.05 was in error and requires remand. Pl.'s Brief at 17-18 [Doc. No. 18].

The Commissioner responds that according to 71 Fed. Reg. 10419, Listing 112.05 requires a finding of mental retardation. Def.'s Response at 8-9 [Doc. No. 20] (citing 71 Fed. Reg. 10419-01, 10423 (Mar. 1, 2006) (the claimant "must have

mental retardation that satisfies the criteria in the introductory paragraph...in addition to the criteria in one of the paragraphs that follows the [introductory paragraph]")). The Commissioner argues that there is no evidence that T.H. suffered from mental retardation, and in fact, school records highlight T.H.'s academic abilities. The Commissioner cites *Scheck v. Barnhart* in concluding that the ALJ had no obligation to articulate his reasons for not including Listing 112.05 in his analysis since the plaintiff did not present sufficient evidence that T.H. met or equaled Listing 112.05. Def.'s Response at 9 [Doc. No. 20] (citing *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (finding that the ALJ was not required to analyze a particular listing when there was no evidence within the record that supported that listing.)).

Listing 112.05 requires "significantly sub-average general intellectual functioning with deficits in functioning." 20 C.F.R. Pt. 404, Subpt. P, App 1. § 112.05. The required level of severity for this disorder is met when the claimant has "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* at § 112.05(D).

Remand is required "where the Commissioner's decision lacks evidentiary support or is poorly articulated as to prevent meaningful review." *Steele*, 290 F. 3d at 940. Although the ALJ is not required to provide a written evaluation of every piece of evidence, the ALJ cannot only discuss that evidence that favors his final conclusion. *Herron*, 19 F.3d at 333 ("the ALJ's decision must be based upon

21

consideration of all the relevant evidence" and "the ALJ 'must articulate at some minimal level his analysis of the evidence.'") (internal citations omitted). In addition, the ALJ's "failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require remand." *Brindisi ex. rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (finding that the ALJ's failure to discuss the claimant's impairments in conjunction with the listings "frustrate[d] any attempt at judicial review.").

In his analysis, the ALJ failed to cite or discuss Listing 112.05 despite the fact that T.H.'s full-scale IQ fell within the requisite parameters. After conducting psychological testing with T.H., Ms. Katz and Dr. Rado stated that there was a 95% probability that T.H.'s actual IQ fell within the range of 59-69. However, the ALJ did not discuss this evidence despite the fact that it was favorable to the plaintiff. Additionally, the ALJ did not discuss T.H.'s physical and mental impairments (ADHD, ODD, and asthma) with regards to Listing 112.05 to determine if those conditions imposed significant limitations in functioning.

This Court rejects the Commissioner's argument that Listing 112.05 requires an actual diagnosis of mental retardation. A claimant will be found to meet Listing 112.05 if their "impairment satisfies the diagnostic description of the introductory paragraph and any one of the six sets of criteria." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The diagnostic description requires "significantly sub-average general intellectual functioning with deficits in functioning." 20 C.F.R. Pt. 404, Subpt. P, App 1. §

112.05. Contrary to the arguments from the Commissioner, there is evidence in the record favorable to T.H. which could indicate that T.H. met the diagnostic description of Listing 112.05. T.H. scored in the extremely low range in the full scale IQ and in verbal comprehension and perceptual reasoning. Additionally, evidence from T.H's treating mental health professionals indicates that T.H. also suffered from deficits in functioning. As Dr. Mula noted, T.H. has marked or extreme limitations in acquiring and using information, interacting and relating with others, and personal care. This evidence favorable to T.H. was not addressed in the ALJ's decision.

Due to the evidence within the record that supports a finding under Listing 112.05, *Scheck v. Barnhart* does not apply as the Commissioner contends. In *Scheck*, there was no evidence within the record that showed that the plaintiff met or equaled the listing. *Scheck*, 357 F.3d at 701. Thus, it was unnecessary for the ALJ to articulate his reasons for denying disability. *Id.* However, in this case, there is evidence within the record that is favorable to the plaintiff and supports Listing 112.05. Therefore, the ALJ's failure to cite or analyze Listing 112.05 or address evidence favorable to the plaintiff requires remand. *See Ribaudo v. Barnhart,* 458 F.3d 580, 583 (7th Cir. 2006) (finding that remand is required where the ALJ did not provide a sufficient analysis of the Step 3 question since he failed to mention the applicable listing and failed to evaluate evidence favorable to the plaintiff); *Scott,* 297 F.3d at 595 (failure to discuss or reference a listing left the court "with

grave reservations as to whether his factual assessment adequately addressed the criteria of the listing."); *see also Brindisi ex rel. Brindisi*, 315 F.3d at 786.

The Court concludes that an outright reversal of the ALJ's decision is not appropriate because there is evidence in the record that could support a finding of non-disability. *See McPheron v. Barnhart*, No. 02 C 6261, 2003 WL 22956395, at *17 (N.D. Ill., Dec. 12, 2003). However, a remand is necessary to allow the ALJ to more fully develop the logical bridge between the evidence and his conclusions. *See id.*

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants in part Plaintiff's Motion for Summary Judgment [Doc. No. 14], denies the Commissioner's Cross-Motion for Summary Judgment [Doc. No. 19], and finds this matter should be remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

**ENTERED:**

**DATE:**    __July 26, 2011__

_____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**